**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEYVIN FRANCISCO GARCIA CASTRO; SINDY KEYLI GARCIA ALTAMIRANO,<br><br>Petitioners,<br><br>v.<br><br>PAMELA BONDI, Attorney General,<br><br>Respondent. | No. 24-1070<br><br>Agency Nos.<br>A220-635-423<br>A220-635-424<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 14, 2025[**]
Pasadena, California

Before: GRABER, TALLMAN, and BUMATAY, Circuit Judges.

Deyvin Francisco Garcia Castro,[1] a native and citizen of Nicaragua, seeks

review of a Board of Immigration Appeals' ("BIA") order affirming an immigration

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[1] Garcia Castro is Lead Petitioner here. His daughter, Sindy Keyli Garcia Altamirano, is a derivative beneficiary of her father's asylum application.

judge's denial of his applications for asylum and withholding of removal.[2] We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's legal conclusions de novo and its factual determinations for substantial evidence. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). We deny the petition.

1. The evidence in the record does not compel us to reverse the BIA's ruling that Garcia Castro failed to show that he experienced past persecution in Nicaragua. *See Sharma v. Garland*, 9 F.4th 1052, 1060–61 (9th Cir. 2021) (explaining that persecution is an "extreme concept" that "does not include every sort of treatment our society regards as offensive" (citations omitted)).

Garcia Castro claims that he suffered persecution when he received violent threats from a paramilitary member employed at Empressa Nicaraguense de Construciones ("ENIC"). The member of the paramilitary told Garcia Castro that he would "pay the consequences" if he did not disappear from Sebaco. But Garcia Castro never tried to return to the area, so the threat amounts to "harassment rather than persecution." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003); *see also Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (explaining that "unfulfilled threats, without more," rarely rise to the level of past persecution); *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (finding no past persecution where the petitioner

---

[2] Garcia Castro concedes that the denial of his application under the regulations implementing the Convention Against Torture was waived before the BIA and is waived here.

received two death threats but was not physically hurt).

Garcia Castro also points to his losing his job at ENIC. Notably, however, he took a paid—though involuntary—vacation and then returned to ENIC for roughly three months before he lost his job. And after ENIC let him go, Garcia Castro appears to have received the opportunity to obtain a severance package. We are thus not compelled to find that Garcia Castro's job loss amounted to a "substantial economic deprivation that constitutes a threat to life or freedom," rather than a "mere economic disadvantage." *Sharma*, 9 F.4th at 1062 (citations omitted).

Finally, Garcia Castro relies on an incident in which he broke his arm while riding his bike to escape from persecutors who were pursuing him on horseback. But Garcia Castro's injury—which came from his falling off his bike during the chase, not from any direct act of a persecutor—is not the type of "significant physical violence" that has constituted persecution in other cases. *Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003); s*ee id.* at 1016–17 (collecting cases showing significant physical violence). Indeed, Garcia Castro recovered from his injury at home without hospital care. *See Sharma*, 9 F.4th at 1061 (stating that a "significant consideration" is whether the petitioner "suffered serious injuries that required medical treatment"). Moreover, Garcia Castro concedes that the pursuers were "drinking liquor" at the baseball game and likely targeted him only because the colors of his shirt matched the colors of the country's flag—evidencing him as a "rallier." That type of isolated

incident "does not begin to resemble persecution." *Lata v. INS*, 204 F.3d 1241, 1245 (9th Cir. 2000).

Accordingly, substantial evidence supports the agency's finding that the cumulative effect of Garcia Castro's experiences falls short of past persecution.

2. The BIA permissibly determined that Garcia Castro did not demonstrate an objectively reasonable fear of future persecution. *See Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009) (stating legal standard). Garcia Castro has not shown that the government has an individualized interest in him; instead, he admits that he was not overtly politically active after 2007 and that he was never arrested or questioned about his political beliefs. And though threats insufficient to constitute past persecution—such as the threats detailed above—can be "indicative of a danger of future persecution," *Lim*, 224 F.3d at 936, the evidence before us does not compel the conclusion that any of the individuals who previously threatened Garcia Castro are likely to have a continued interest in him. Similarly, the record contains little to no evidence that the generalized violence against anti-government views in Nicaragua presents a systematic pattern that would make Garcia Castro's fear objectively reasonable.

3. Lastly, substantial evidence supports the BIA's conclusion that Garcia Castro failed to show persecution on account of a protected ground—specifically, his political opinion. For both claims, Garcia Castro must show a nexus between his

past harms or feared future harms and a protected characteristic. *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023). It is the persecutor's motive that matters for nexus. *Barajas-Romero v. Lynch*, 846 F.3d 351, 357 (9th Cir. 2017). The BIA concluded that Garcia Castro presented only minimal evidence that he was a member of the Partido Liberal Constitucionalista ("PLC") and that insufficient evidence existed for anyone to perceive him as opposing the government. Once again, we are not compelled to find otherwise.

**PETITION DENIED.**